New York Central Railroad Company *vs.* Marinucci
Bros. & Co., Inc.

Suffolk.    April 7, 1958. — May 5, 1958.

Present: Wilkins, C.J., Ronan, Spalding, Whittemore, &
Cutter, JJ.

*Negligence*, Excavation, Lateral support.    *Real Property*, Lateral support.

Evidence warranted a finding that a contractor excavating a trench near
a railroad location was negligent in failing to drive the sheathing in
the trench to a sufficient depth, whereby water carrying silt seeped
from the location into the trench and the location was undermined.

Tort.    Writ in the Municipal Court of the City of Boston
dated November 14, 1956.

The action was heard by *Adlow*, C.J.

*Peter D. Cole*, for the defendant.

*Richard J. Ferriter*, for the plaintiff.

Ronan, J.    This is an action of tort to recover damages
arising from the drainage of subsurface water and silt from
the plaintiff's right of way by the excavating by the de-
fendant of a trench on adjoining land for the purpose of
laying a sewer.    The judge found for the plaintiff and the
case is here on appeal from an order of the Appellate Divi-
sion dismissing the report.

The trial judge refused to give certain requests for rul-
ings.    While the declaration consisted of two counts, after
the third had been waived, the first for negligence, the
second for nuisance, his treatment of the requests shows
that his finding for the plaintiff was based on the first count.
We shall confine our discussion to the denial of the defend-
ant's requests directed to that count.

The defendant, under a contract with the metropolitan
district commission, undertook the excavation for a sewer
for a distance of twenty-five hundred feet, adjacent to and
at places about twenty-five feet distant from the side line

of the plaintiff's location near the Natick-Framingham town line. The preliminary plans disclosed a large amount of water in the area to be excavated, and two surface streams flowing from a nearby pond over the area in which the excavation was to be made. There was evidence that the soil was especially difficult with respect to the type of construction required and presented problems of an unusual nature. The actual work of excavating began at the end of November, 1954, at which time the defendant used wood sheathing held in place by steel bars to hold back water seepage and silt. There was no falling off of soil into the ditch from the sides at any time when seepage occurred. But water and fine silt came under the wood sheathing at the bottom of the ditch. During January and early in February, 1955, an assistant engineer of the plaintiff observed cracks along the pole line of the right of way about twenty-five feet from the excavation and a hole under track 4 approximately seventy-five feet from the excavation. About the end of February, the defendant used steel instead of wood sheathing upon the recommendation of the plaintiff and apparently the situation was in the main remedied except on the following two occasions. On September 1, 1955, a signal box and the relay housing had tipped to one side. The box was about twenty-three feet from the excavation. One side of the foundation of the box was exposed for three and a half feet and the rear end housing was also exposed. It took several men to straighten out the foundation and box several days at a cost for labor amounting to $417.53. On September 17, 1955, one Boulkwill, a supervisor of tracks for the plaintiff, observed that track 1, situated about forty feet from the excavation, had settled about four inches for a distance of about one hundred feet. When the condition of the track was observed by the plaintiff's employees, watchmen were hired to check any subsidence of the tracks and report any new defects. The plaintiff was also required to expend sums in order to repair the damage to its right of way and other structures. One Spector, an assistant engineer of the plaintiff, testified that the seepage of water and silt into the

ditch drew soil from under the track and resulted in a withdrawal of support to the tracks and other structures. Another witness for the plaintiff testified that the difficulty in driving sheathing down far enough due to the presence of large rocks accounted for the seepage. He further testified that there was water seepage during September, 1955. One Hickey testified for the defendant that in his opinion the hole under track 4 was in no way caused by the excavation. He also testified that the defendant used every precaution possible during the entire excavation. One McCassey testified that there was no trouble from seepage while they were using steel sheathing until September, 1955, when a strip of sheathing could not be driven down deep enough because of a rock and the defendant had to contain the seepage by packing until the rock could be blasted out and the sheathing driven farther down.

There was no evidence that the making of the excavation caused any interference with the regular operation of the railroad.

At the close of the evidence the trial judge granted the defendant's requests for rulings that it did not violate any statute, ordinance or regulation, and that the excavation was not a nuisance. He refused to grant a request for a ruling that the evidence did not warrant a finding that the defendant was negligent, and also refused to grant a request for a ruling that, if there was negligence, the evidence did not warrant a finding that it was the proximate cause of the loss. It is apparent from the rulings granted that the trial judge based his decision on negligence and not nuisance or the violation of any statutory obligation. See *Howard* v. *Malden Savings Bank*, 300 Mass. 208, 213–214. The record states that all material evidence relating to the issues has been reported. The general finding in favor of the plaintiff imports the drawing of all rational inferences to support that conclusion which are permissible on the evidence and the finding of all subsidiary facts conducing to that result of which the testimony is susceptible, and the finding must stand unless unsupported by the evidence. *Moss* v. *Old*

*Colony Trust Co.* 246 Mass. 139, 143. *Standard Oil Co. of New York* v. *Malaguti,* 269 Mass. 126, 129. *Mahoney* v. *Norcross,* 284 Mass. 153. *MacDonald* v. *Adamian,* 294 Mass. 187, 190–191. *Home Savings Bank* v. *Savransky,* 307 Mass. 601, 605.

It is well settled that for an excavation causing an injury to the soil of an adjoining owner in its natural state an action will lie, but that no recovery will be allowed in the absence of negligence or a direct trespass for an injury to structures by excavating the adjoining land. *Thurston* v. *Hancock,* 12 Mass. 220. *Foley* v. *Wyeth,* 2 Allen, 131. *Gilmore* v. *Driscoll,* 122 Mass. 199. *Kronberg* v. *Bulle,* 247 Mass. 325, 328. *Gorton* v. *Schofield,* 311 Mass. 352, 356. *Corcoran* v. *S. S. Kresge Co.* 313 Mass. 299, 303. *Langdoc* v. *Gevaert Co. of America, Inc.* 315 Mass. 8, 11. See also 50 A. L. R. 486. Irrespective of the absolute liability for damage to the soil in its natural condition, an excavator owes a duty to an adjoining landowner to use reasonable care in his operations, and if as a result of his failure to use reasonable care he removes the lateral support of an adjoining owner he will be liable for all damages proximately caused. *Hopkins* v. *American Pneumatic Service Co.* 194 Mass. 582, 583. *Hartshorn* v. *Tobin,* 244 Mass. 334. *Kronberg* v. *Bulle,* 247 Mass. 325. *Gray* v. *Tobin,* 259 Mass. 113. See *Moraski* v. *T. A. Gillespie Co.* 239 Mass. 44, 47; Restatement: Torts, § 819; Tiffany, Real Property (3d ed.) § 753. The same obligation is imposed upon the excavator in withdrawing a mixture of silt and water as if he was removing only sand. *Cabot* v. *Kingman,* 166 Mass. 403. Am. Law of Property, § 28.46.

There was evidence that before the defendant started work it knew that it would encounter difficulty from the presence of water and that the wooden sheathing was not properly driven deep enough to prevent water and silt from being deposited in the trench. There was also evidence that in one or two instances the steel sheathing was not driven down to a sufficient depth. The depth of the sewer excavation is not disclosed in the record but it does appear that

sheathing of the length of thirty to thirty-two feet was used. The judge was warranted in finding negligence upon the part of the defendant, and it follows that there is no necessity for examining specially the denial of the other requests which in one way or other concerned an alleged nuisance as set forth in the second count.

*Order dismissing report affirmed.*